**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
PIERRE SANCHEZ,

                      *Pro se* Plaintiff,

                -against-

NASSAU COUNTY, CORRECTION OFFICERS
JOHN DOES 1-5, ARMOR MEDICAL GROUP,
NASSAU COUNTY SHERIFF'S DEPARTMENT,
and SHERIFF MICHAEL SPOSATO,

                    Defendants.
------------------------------------------------------------X

                              **REPORT AND**
                              **RECOMMENDATION**

                         CV 17-7335 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, U.S. Magistrate Judge:**

I.    **PRELIMINARY STATEMENT**

      *Pro se* Plaintiff Pierre Sanchez ("Plaintiff") brings the instant action against Defendants

Nassau County, certain corrections officers at the Nassau County Correctional Center

("NCCC"), the Nassau County Sheriff's Department, and Nassau county Sheriff Michael

Sposato (collectively, the "County Defendants"), along with Armor Medical Group ("Armor")

(collectively, "Defendants"), alleging multiple constitutional violations. *See generally* Plaintiff's

Amended Complaint ("Am. Compl.") [DE 19-1]. Plaintiff's claims arise out of an attack he

alleges he suffered at the hands of several other inmates while in the recreation yard of the

NCCC. *See generally id.* Presently before the Court are three motions: (1) Plaintiff's motion

for summary judgment [DE 27]; (2) Armor's motion to dismiss the claims against it [DE 47];

and (3) a second motion for summary judgment filed by Plaintiff [DE 52].

      Judge Bianco referred all three motions to this Court for a Report and Recommendation

as to whether the motions should be granted. *See* DE 56. For the reasons set forth below, this

Court respectfully recommends to Judge Bianco that Plaintiff's motions for summary judgment be DENIED and that Armor's motion to dismiss be GRANTED.

## II.   BACKGROUND

### A.   The Allegations in Plaintiff's Pleadings[1]

Judge Bianco has designated as the operative pleading Plaintiff's Amended Complaint which was filed on May 14, 2018 and which utilizes the Eastern District's standard *pro se* form complaint. *See* DE 22. The Court therefore takes the following allegations from this pleading and accepts them as true for purposes of analyzing Defendants' motion to dismiss.[2] *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013). However, the Court does not credit conclusory statements, legal conclusions, or unwarranted deductions. *See Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (explaining that when analyzing the sufficiency of a complaint, "mere conclusions of law or unwarranted deductions need not be accepted").

The events at the center of Plaintiff's lawsuit are not complex. The Court recites Plaintiff's allegations verbatim:

> On November 18th around 15:30 I was slashed from behind. This happened in the wreck yard right in front of corrections officers. I now have an 11 inch scar on my face forever. The implications of which I will be judged for the rest of my life. Employment etc. I am under the care and custody of Nassau County Correctional Center. There are no metal detectors. No "pat-downs." No security measures what so-ever. I was placed in a Max-A unit, when in fact my classification is low. Per my classification and transfer from riker's Island. I am suffering in ways I can't even explain.

---

[1]   For ease of reference and because the allegations in Plaintiff's pleadings are not organized into consecutively-numbered paragraphs, the Court references his allegations by the page number of his Amended Complaint.

[2]   For reasons explained below, this method of construction does not affect the Court's treatment of Plaintiff's motions for summary judgment.

> . . .
>
> On November 18th I was slashed on the right side of my face from behind in E1B wreck yard. Earlier in the day a C.O. that I have seen before and know by face was on the E1B unit talking to me in front of other inmates threatening me about a situation that was before this very court more than 8-9 years ago. After I was slashed I was informed by C.O.s that they would have more done to me, and were very happy about what had happened already to me. They reminded me of where I was and how easy they could "lose me."

Am Compl. at 6-7.

On his *pro se* form complaint where he was asked whether or not he pursued a remedy through a prisoner grievance procedure, Plaintiff wrote in both the section indicating that he did file a grievance, as well as in the section indicating that he did not. When asked what steps he took to seek a remedy through a prisoner grievance procedure, he wrote the following: "I called 311 three times when I got to Riker's Island,[3] filed two reports in writing. I wrote housing in Nassau before I was transferred to Riker's." Am Compl. at 4. Where he was asked about the result of his grievance, Plaintiff stated: "Nothing, absolutely no results. My life is in so much danger, no help at all." *Id*. As to why he did not pursue a remedy through a prisoner grievance procedure if he did not, Plaintiff stated as follows: "I was slashed at the behest of the correction[] guards. My life was literally in their hands. I begged with tears in my eyes not to transfer me back to this jail for fear of my life. Nobody cares!" *Id*.

With his Amended Complaint, Plaintiff filed a single page from an online news article regarding an NCCC nurse who pleaded guilty to smuggling cigarettes into the NCCC. *See* Am. Compl. at 5. Plaintiff also filed a letter to the Court's Pro Se Office with his Amended Complaint. In that letter, Plaintiff recounts his attempts to retain an attorney and further states:

---

[3]  It appears Plaintiff was subsequently transferred from the NCCC to Rikers Island and then back to the NCCC.

> [M]y case speaks for itself.  There is a video, the [recreation] yard is extremely small, two officers were right by/adjacent to me.  Officers in their official and individual capacity cannot be indifferent or complicit.  In fact the officers earlier in the day (early morning) provoked the situation.  Then refused to help me, and mocked me immediately afterwards.  A prior lawsuit was ("the straw that broke the camel's back") for them.  When I was exposed for "snitching" in a lawsuit, prior to the event on November 18, 2017.  The inmate who slashed me was doing it at the behest of said officers.  From their own mouth to my ears, [ ] all the evidence will show that.

DE 19 at 2.

### B.     Relevant Procedural Background

Plaintiff filed his initial Complaint in this action on December 18, 2017.  *See* DE 1.  The County Defendants filed an Answer to the initial Complaint on March 22, 2018.  *See* DE 12.  On March 27, 2018, Plaintiff filed a letter request to Judge Bianco asking that he be permitted to amend his Complaint to include certain Nassau County corrections officers as defendants.  *See* DE 14.  In that letter, Plaintiff stated at length the circumstances surrounding the attack he alleges he suffered, as well as his alleged treatment by corrections officials following the attack.  *See id.*  He also attached to his letter what appears to be a letter to the New York State Attorney General's Office regarding security at the NCCC, along with an online news article dealing with smuggling and contraband at the NCCC.[4]  *See id.*  On the same day – March 27, 2018 – Plaintiff filed an "Amended Complaint" which named as defendants two unknown corrections officers, Nassau County, and Armor.  *See* DE 15.  On May 14, 2018, a second "Amended Complaint" was filed which contained allegations identical to those in the previous Amended Complaint.  However, the May 14, 2018 filing named as defendants the County, the Sheriff's Department,

---

[4]   The article attached to this filing appears to be the full version of the article, a single page of which is attached to Plaintiff's Amended Complaint.

Sheriff Michael Sposato, Armor, and five unnamed corrections officers. *See* DE 19. Along with this second Amended Complaint, Plaintiff filed a letter to the Pro Se Office. *See id*. Following correspondence from the County Defendants indicating that they did not oppose the amendment, *see* DE 20, Judge Bianco accepted this second Amended Complaint and designated it the operative pleading in his May 30, 2018 Order. *See* DE 22.

On June 4, 2018, Plaintiff filed with the Court a thirteen-page correspondence. *See* DE 24. Labeled as "NOTICE of filing Additional Supplement to the Amended Complaint," this filing purports to assert multiple legal arguments, asks for discovery relief and "punitive damages," and contains multiple factual allegations pertaining to the time period preceding and following the alleged incident on November 18, 2017. *See id*. Similarly, on June 13, 2017, Plaintiff filed two letters to Judge Bianco. *See* DE 25. The purpose of these letters is unclear. However, Plaintiff references in them a temporary restraining order and a preliminary injunction and seeks relief related to his housing situation. *See id*. He also discusses at length what he considers to be imminent threats to his safety in custody. *See generally id*. In addition to the letters, Plaintiff submitted assorted legal paperwork, including an order of dismissal of a New York State Court of Claims action commenced by Plaintiff against the State of New York. *See id*. at 6-7.

Plaintiff filed his first motion for summary judgment on June 28, 2018. *See* Plaintiff's First Motion for Summary Judgment ("Pl.'s Mot. I") [DE 27]. On July 2, 2018, Plaintiff filed another letter to Judge Bianco raising several complaints and concerns regarding his housing status. *See* DE 28.

Armor filed a letter request to Judge Bianco on July 12, 2018 seeking a pre-motion conference for purposes of moving to dismiss the claims against it. *See* DE 33. On July 16,

2018, Judge Bianco dispensed with his pre-motion conference requirement and set a briefing schedule for Armor's motion to dismiss. *See* DE 35. The County Defendants filed their Answer to Plaintiff's Amended Complaint on July 25, 2018. *See* DE 37. Armor filed its motion to dismiss on August 16, 2018. *See* Armor's Memorandum in Support of its Motion to Dismiss ("Armor Mem.") [DE 47].

On July 23, 2018, Plaintiff filed two pieces of correspondence with the Court. The first is a letter "making [the Court] aware that [Plaintiff] is filing a complaint against the District Attorney's Office in Queens," along with a complaint against a judge of the New York State Supreme Court. DE 38. This letter contains several allegations regarding Plaintiff's underlying criminal proceeding. *See id.* The second letter is styled as Plaintiff's "Response to counsel's request for a pre-motion conference," in which Plaintiff states his opposition to the arguments raised by Armor in its letter request for a pre-motion conference. DE 39.

Plaintiff filed his narrative statement of the facts he anticipates presenting at trial on August 24, 2018, including a list of evidence he intends to present and witnesses he intends to question.[5] *See* DE 49. Several days later, on August 29, 2018, Plaintiff filed three documents. Two of the documents raise arguments in opposition to Armor's motion to dismiss. *See* Plaintiff's First Opposition to Armor's Motion to Dismiss ("Pl.'s Opp'n. I") [DE 50]; Plaintiff's Second Opposition to Armor's Motion to Dismiss ("Pl.'s Opp'n. II") [DE 51]. Plaintiff also filed a second motion for summary judgment. *See* Plaintiff's Second Motion for Summary Judgment ("Pl.'s Mot. II") [DE 52]. Armor filed its reply memorandum in further support of its motion to dismiss on October 1, 2018. *See* Armor's Reply ("Armor Reply") [DE 55]. Judge

---

[5]   The narrative statements of Armor and the County Defendants were filed on October 22, 2018, and October 23, 2018, respectively. *See* DE 60, 62.

Bianco referred both motions for summary judgment as well as Armor's motion to dismiss to this Court on October 5, 2018 for a Report and Recommendation as to whether the motions should be granted.  *See* DE 56.

Since Judge Bianco's referral of the motions, Plaintiff has made several further filings with the Court.  On October 15, 2018, Plaintiff filed a letter to Judge Bianco raising further allegations against Armor, as well as arguments in opposition to Armor's motion to dismiss.  *See* DE 57.  Several days later, on October 18, 2018, Plaintiff directed a letter to this Court, making further arguments in support of his motions for summary judgment and asking that the Court view video footage of the alleged attack.  *See* DE 58.  On the same day, Plaintiff filed a second letter to this Court, informing the Court that "when the action [ ] is set for trial [Plaintiff] will be retaining the services of Frederick K. Brewington."  DE 59.  Plaintiff further advised the Court as to how he thinks his damages should be paid.  *See id*.  Lastly, on November 20, 2018, Plaintiff submitted a letter in which he asks seven "questions" of the Court concerning discovery as well as the allegations underlying his claims.  *See* DE 68.

On November 28, 2018, this Court held an Initial Conference which Plaintiff attended by telephone.  The Court stayed all discovery pending determinations of the three motions referred to this Court by Judge Bianco.  *See* DE 69.  The Court further directed Plaintiff not to make any further submissions until these motions were decided.  *See id*.

## III.   PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

The Court finds it necessary to first address Plaintiff's motions for summary judgment in order to provide certain context.  Plaintiff's first motion for summary judgment recites what Plaintiff believes to be the uncontested facts underlying his claims.  Along with the motion,

Plaintiff has submitted a document titled "affidavit in support."[6]  In his second motion for summary judgment, Plaintiff requests "that the court combine [his] other summary judgment [motion] with this one."  DE 52 at 4.  The latter document recites in narrative form the attack Plaintiff alleges he suffered on November 18, 2017.  *See generally id.*  Both motions quote the language of Federal Rule of Civil Procedure 56.

It is a general principle of federal civil procedure that summary judgment is normally appropriate only after each party has had an opportunity to engage in discovery and to develop the factual record.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") (emphasis added).  The Second Circuit has held that "summary judgment should only be granted if '*after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'"  *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (emphasis in original) (quoting *Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000)).

In light of the purpose of summary judgment and this Circuit's case law interpreting Federal Rule of Civil Procedure 56, the Court finds the instant motions for summary judgment premature:  no discovery has been conducted and discovery is currently stayed.  *See* DE 69.  This factor alone would necessitate deferring any decision on a motion for summary judgment – for

---

[6]  Plaintiff's "affidavit in support" primarily contains rhetorical "questions" which Plaintiff believes illustrate the inconsistencies in what he assesses as Defendants' reasoning.

8

the preservation of Plaintiff's interests as much as for the Defendants' interests.  *See Trammell v. Keane,* 338 F.3d 155, 161 n.2 (2d Cir. 2003) ("[O]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *Penn Mut. Life Ins. Co. v. Madow*, No. CV 07-3188, 2009 WL 804719, at *4 (E.D.N.Y. Mar. 26, 2009); *Granoff v. Merrill Lynch & Co.*, No. 89 CIV. 0159, 1989 WL 260227, at *1 (S.D.N.Y. Oct. 16, 1989) ("[N]o discovery has taken place. Plaintiff is entitled to discovery . . . . The motion for summary judgment is denied pursuant to [Rule 56] without prejudice to a similar motion being made after discovery has been concluded.").

Moreover, Plaintiff's motions must be denied as premature for an equally important reason:  Plaintiff's own filings make clear that he seeks both discovery, *see, e.g.*, DE 58, 68, and a trial on the merits of his claims for which he anticipates retaining the services of counsel.  *See* DE 59.  Similarly, in his second summary judgment motion, Plaintiff asserts that "[t]here are no issue [*sic*] as to any material facts.  The camera footage will show this without a doubt," and he "request[s] this court to grant my motion after reviewing said footage."  DE 52 at 4.  It seems that the relief Plaintiff is actually seeking is related to discovery – specifically the video footage he believes recorded his alleged attack.

In light of the procedural posture of the case, this Court respectfully recommends to Judge Bianco that Plaintiff's two motions for summary judgment be DENIED, without prejudice, and with leave to re-file after the close of discovery.

## IV.    ARMOR'S MOTION TO DISMISS

Having addressed Plaintiff's motions for summary judgment, the Court turns to Armor's motion to dismiss and the sufficiency of Plaintiff's Amended Complaint.  The Court first briefly

addresses (1) the standard of review for Armor's motion and (2) the scope of what the Court may properly consider in addressing Armor's motion.

### A.       Standard of Review

It is established law in this Circuit that *pro se* filings like Plaintiff's pleadings are to be liberally construed.  *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

*Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law."  *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).  Likewise, "mere conclusions of law or unwarranted deductions need not be accepted."  *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss remains applicable here:  the Court must liberally construe the claims set forth in the Amended Complaint, accept all factual allegations in the Amended Complaint as true, and draw all reasonable inferences in favor of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [Amended] [C]omplaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

## B.    The Scope of What the Court May Consider

In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the operative pleading, which allegations are accepted as true; to documents attached to the operative pleading as exhibits or incorporated into the pleading by reference; to matters of which judicial notice may be taken; and to documents whose terms and effect are relied heavily upon in the operative pleading and, thus, are rendered "integral" to it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P.

12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).  Significantly, however, "in deciding a motion to dismiss a pro se complaint, it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint,' *Alsaifullah v. Furco*, No. 12 CIV. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013), including 'documents that a pro se litigant attaches to his opposition papers.'" *Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Agu v. Rhea*, No. 09–CV–4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)).

Pursuant to the above standard, the Court finds conversion to a motion for summary judgment unnecessary here.  In its discretion, the Court may consider both of the letters Plaintiff has filed in opposition to Armor's motion (DE 50 and DE 51), as well as allegations contained in Plaintiff's other submissions.  Consideration of allegations contained in submissions beyond the Amended Complaint, however, is limited to allegations which are "consistent" with those made in the Amended Complaint.  *Martinez*, 164 F. Supp. 3d at 508; *cf. Triestman*, 470 F.3d at ("[W]e should not excuse frivolous or vexatious filings by *pro se* litigants, and [ ] *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).  This approach balances the solicitude with which the Court must treat *pro se* litigants with the well-established principle that "[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers." *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) (quoting *Southwick Clothing LLC v. GFT (USA) Corp.,* No. 99–CV–10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004)).

As to Armor's submissions, the Court declines to consider the "THIRD AMENDMENT TO CONTRACT FOR SERVICES" attached to Armor's motion to dismiss.  *See* DE 47-3.  This

12

document is submitted by Armor to support its argument that "at the time of the alleged slashing, Armor was no longer the medical provider at the NCCC." Armor Mem. at 10. Because the document is extraneous to the allegations in Plaintiff's Amended Complaint, the Court may not consider it under the standard of review for a Rule 12(b)(6) motion. Moreover, for the reasons already mentioned with respect to Plaintiff's motions for summary judgment, the Court declines to convert Armor's motion to dismiss to a motion for summary judgment for purposes of considering the document.

## C.    Discussion

Amor's motion to dismiss raises several discrete arguments, namely, that: (1) Plaintiff has failed to allege a plausible Section 1983 claim against Armor; (2) Plaintiff has failed to allege a plausible claim for negligent hiring, training, or supervision against Armor; and (3) Plaintiff's entire suit is barred by the Prison Litigation Reform Act ("PLRA") because Plaintiff did not exhaust his administrative remedies. *See generally* Armor's Mem. The Court addresses Armor's third argument first.

### 1.    *Exhaustion of Administrative Remedies*

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This administrative exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Torres v. Carry*, 672 F. Supp. 2d 338, 342-43 (S.D.N.Y. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). As the Supreme Court has held, the PLRA's "mandatory language means a court may not excuse a failure to exhaust,

even to take [special] circumstances into account." *Ross v. Blake*, 136 S. Ct. 1850, 1856, 195 L. Ed. 2d 117 (2016). The Supreme Court has held that the unavailability of administrative remedies is the only exception to this rule. *Id.* at 1858 ("[O]ur rejection of the Fourth Circuit's 'special circumstances' exception does not end this case—because the PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

However, it is settled law that administrative "exhaustion is an affirmative defense, not a pleading requirement; thus, inmate plaintiffs need not 'specially plead or demonstrate exhaustion in their complaints.'" *Munoz v. Eliezer*, No. 16-CV-6049, 2018 WL 1626170, at *3 (S.D.N.Y. Mar. 30, 2018) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)). "Because failure to exhaust is an affirmative defense, the defendant has the burden 'to demonstrate nonexhaustion,' and it is 'not [the] [p]laintiff's burden to plead exhaustion with particularity.'" *Preterotti v. Souliere*, No. 2:16-CV-72, 2016 WL 7971319, at *3 (D. Vt. Dec. 28, 2016) (quoting *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 722 (W.D.N.Y. 2015), *report and recommendation adopted sub nom. Preterotti v. Douliere*, No. 2:16-CV-72, 2017 WL 318798 (D. Vt. Jan. 23, 2017); *see Morgan v. Ward*, No. 1:14-CV-7921, 2016 WL 427913, at *4 (S.D.N.Y. Feb. 2, 2016) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints.") (quoting *Jones*, 549 U.S. at 216)); *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (same). For this reason, "it is generally inappropriate for a district court to grant a motion to dismiss on failure to exhaust grounds, unless nonexhaustion is evident on the face of the plaintiff's complaint." *Preterotti*, 2016 WL 7971319, at *3 (citing *Morgan,* 2016 WL 427913, at *4); *Lewis v. Havernack*, No. 9:12-CV-0031, 2013 WL 1294606, at *4 (N.D.N.Y. Mar. 28,

14

2013) ("The exhaustion defense is one that is not particularly well-suited for resolution for a motion to dismiss, absent the clearest indication in a plaintiff's complaint that a failure to exhaust has occurred.").

Plaintiff's Amended Complaint states that he "filed two reports in writing," and that he "wrote housing in Nassau before [Plaintiff] was transferred to Riker's." Am Compl. at 2. Liberally construing these allegations and drawing all reasonable inferences in Plaintiff's favor, the Court declines to recommend dismissal of his claims for failure to exhaust his administrative remedies, as nonexhaustion is not evident on the face of the pleading.[7] *See Poole v. Armor Corr. Health Servs.*, No. 15-CV-2927, 2016 WL 1089350, at *9 (E.D.N.Y. Mar. 21, 2016)) (declining to dismiss a complaint pursuant to Rule 12(b)(6) where a plaintiff alleged to have filed multiple sick call forms and letters without response). The Court finds that resolution of the issue of exhaustion of administrative remedies would be aided by fact discovery. Accordingly, the Court respectfully recommends to Judge Bianco that Armor's motion to dismiss on the grounds of failure to exhaust administrative remedies be DENIED.

---

[7] The Court is aware that in his first opposition, Plaintiff stated as follows with regard to the prison grievance system: "[o]f course I had to get outside attention i.e. the federal court system before putting anything on paper." Pl.'s Opp'n. I at 4. While Armor might argue that this assertion affirmatively establishes Plaintiff's failure to exhaust his administrative remedies, the Court finds Plaintiff's allegations in his Amended Complaint to be controlling where, as here, there exists a factual discrepancy between the operative pleading and what the Court has identified as Plaintiff's motion papers.

The Court also notes that courts may take limited judicial notice of administrative documents pertaining to a plaintiff's failure to exhaust his administrative remedies when adjudicating a Rule 12(b)(6) motion to dismiss. *See Munoz*, 2018 WL 1626170, at *4; *Smith v. Miller*, No. 15-CV-9561, 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017). The Court is unaware of any such document in the instant matter.

### 2.     *Section 1983 and Armor*

Although Plaintiff does not reference the statute, Armor assumes that Plaintiff is

attempting to raise a claim pursuant to 42 U.S.C. § 1983.  The Court finds this construction of

the Amended Complaint to be reasonable.  With regard to the specific constitutional right of

which Plaintiff alleges he was deprived, in his June 4, 2018 filing docketed as "NOTICE of filing

Additional Supplement to the Amended Complaint," Plaintiff states as follows:  "[c]reating or

allowing an unconstitutional policy or custom applies to my situation on November 18, 2017.

Deficient management and reckless-gross negligent behavior.  Making the events that unfolded

inevitable."  DE 24 at 3.  Plaintiff goes on to state that "[a]ll parties [ ] violated Plaintiff (Pierre

Sanchez) Eighth Amendment rights."  *Id*.  Based on this language, the Court will proceed to

analyze Armor's motion with the understanding that Plaintiff attempts to assert a Section 1983

claim against Armor for deprivation of Plaintiff's rights under the Eighth Amendment to the

United States Constitution.

Armor contends that Plaintiff is unable to plausibly allege a viable Section 1983 claim for

the following reasons:  (1) Plaintiff has failed to allege any personal involvement by Armor in

the alleged constitutional deprivation; (2) Armor was not the medical provider at NCCC at the

time of the alleged attack on Plaintiff; and (3) Plaintiff has failed to allege that Armor's actions

were in accordance with an official policy or custom, or that a policymaker was deliberately

indifferent to any violation of Plaintiff's constitutional rights.  *See generally* Armor Mem.

The Court can quickly dispose of Armor's argument that Plaintiff's claims must fail

because it was no longer providing medical care at the NCCC on November 18, 2017.  As

explained in detail above, the Court must limit its inquiry to the sufficiency of Plaintiff's

allegations; consequently, the Court cannot consider Armor's evidentiary submission purporting

to show that it was not engaged in providing medical services at the time of the alleged attack. This argument must therefore be rejected at this juncture.[8]

### a.    Applicable Law

Title 42 of the United States Code, Section 1983, provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proceeding for redress.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).  "For claims under Section 1983, a plaintiff must prove that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 316-17 (E.D.N.Y. 2014) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).  As a general matter, private parties are not liable under Section 1983 because they are not state actors, "although they may be liable where there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself, or where they are jointly engaged with state officials in a conspiracy to deprive the plaintiff of his constitutional rights."

---

[8]  The Court also observes that Armor's argument, were the Court to entertain it, may not be dispositive of Plaintiff's claim since Plaintiff appears to argue that razorblades smuggled in by Armor employees were still present in the NCCC even after Armor no longer had an active contract with the County.

*Bhatia v. Yale Sch. of Med.*, 347 Fed. App'x 663, 664-65 (2d Cir. 2009) (summary order) (internal quotations and citations omitted); *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 187 (2d Cir. 2005) ("For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.").

As noted, Plaintiff asserts that Armor violated his Eighth Amendment rights. "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A prison official violates the Eighth Amendment only when two prerequisites are met: (1) whether, objectively, a prisoner was actually deprived of adequate medical care, and (2) whether – again, objectively – the inadequacy in medical care is sufficiently serious. *Id*. at 279-80; *see Farmer v. Brennan,* 511 U.S. 825, 832 (1994).[9]

## b.    Application to Plaintiff's Allegations

As an initial matter, the Court finds that any conduct undertaken by Armor while it was under contract with the County to provide medical services to persons incarcerated at the NCCC

---

[9]  It is important to note a somewhat recent development in the law of this Circuit. In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit held, in light of the Supreme Court's decision in *Kingsley v. Henderickson*, ⎯ U.S. ⎯, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), that the standard for deliberate indifference depends on whether the plaintiff is a pre-trial detainee, in which case the claim arises under the Fourteenth Amendment, or a convicted prisoner, in which case the claim arises under the Eighth Amendment. It is unclear from the pleadings whether Plaintiff was, at the time of the alleged attack, a pre-trial detainee or a convicted prisoner. However, as a practical matter, the distinction does not affect the Court's ultimate conclusion – that Plaintiff fails to plead a Section 1983 claim. The reason is that "[a] [pre-trial] detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner," *Darnell*, 849 F.3d at 29 (quotation marks omitted), and Plaintiff has failed to plead a violation under the Eighth Amendment. As a result, he is necessarily unable to plead a violation under the Fourteenth Amendment.

is properly considered conduct "under color of state law" for purposes of Section 1983.  *Poole*, 2016 WL 1089350, at *3 ("Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor was 'acting under the color of state law' for purposes of Section 1983."); *Sykes v. McPhillips,* 412 F. Supp. 2d 197, 202 (N.D.N.Y. 2006) ("It is clear that medical care providers working in a prison are state actors.").

Although Armor is properly considered a "state actor" with respect to Plaintiff, Plaintiff has failed to plausibly allege that Armor acted in any way that could invite liability under Section 1983.  First, it is unclear from Plaintiff's Amended Complaint what specific conduct of Armor Plaintiff is attempting to address here.  The operative pleading states that the attack happened "in front of corrections officers" and that the attack was at least in part the result of comments certain corrections officers had made to him prior to the attack.  Am. Compl. at 6-7.  There is no allegation, however, that Armor was involved in any of the events preceding or following the attack.  In fact, the only reference to Armor in the operative pleading (outside of the caption) is found in the single page of the online news article filed with it which reports that certain "arrests . . . came at a time when Armor was under fire in connection with a series of inmate deaths."  *Id.* at 5.  Plaintiff's Amended Complaint therefore fails to plausibly allege the existence of *any* conduct constituting a constitutional deprivation.[10]

---

[10]    Although Armor contends that Plaintiff's Section 1983 claim must also fail because Plaintiff has failed to allege any personal involvement, *see* Armor Mem. at 9, such argument is misplaced here.  Personal involvement is a necessary element of a Section 1983 claim against an individual defendant, *see Marentette v. City of Canandaigua*, 351 F. Supp. 3d 410, 433 (W.D.N.Y. 2019) ("In order to state a claim for relief under § 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation."); however, Plaintiff's claim against Armor is against the corporate entity, not an individual.

It is noteworthy that the allegations in Plaintiff's other filings – which the Court in its discretion may consider to the extent they are consistent with Plaintiff's Amended Complaint, *see Martinez*, 164 F. Supp. 3d at 508 – expand the scope of the claims against Armor to include that "Armor's employees were in fact caught/exposed for bringing in 100/hundreds of razors for gang members." DE 57 at 3; *see* DE 58 at 2 ("I just want to suggest that the court contact D.A. Singas and ask for files relating to Armor's employees smuggling in hundreds of razors for gang members."). However, the Court need not directly address which of these other allegations may be considered by the Court – that is, which of these other allegations are "consistent" with Plaintiff's Amended Complaint. Having reviewed these other submissions and the allegations they contain, the Court is satisfied that even if the Court were to consider them, they do not sufficiently allege Armor's liability under Section 1983. Plaintiff's conclusory statements concerning allegations of smuggling are simply not sufficient to raise a plausible inference of improper conduct.[11] In the Court's view, these additional submissions make it apparent that Plaintiff's lawsuit is uniformly one against the County and certain corrections officers for what he sees as insufficient security measures – if not outright malfeasance with respect to his safety. *See, e.g.*, *id*. at 12-13 (outlining security measures Plaintiff wishes to see implemented).

In light of Plaintiff's failure to adequately allege Armor's liability under Section 1983, the Court respectfully recommends to Judge Bianco that Armor's motion to dismiss be GRANTED as to Plaintiff's Section 1983 claim for deprivation of his Eighth Amendment rights.

---

[11] The full version of the online news article, one page of which is submitted with Plaintiff's Amended Complaint, is filed at DE 14. Although the Court may take judicial notice of the fact of the article, the Court may not accept as true the matters asserted in it. *Garber v. Legg Mason, Inc.*, 347 Fed. App'x 665, 669 (2d Cir. 2009). In the Court's view, even if it were to accept as true the content of the article, the information is of little use to Plaintiff in providing factual support for his allegations against Armor within the context of the attack against him.

### 3.    *Negligent Hiring, Training, or Supervision*

Armor also assumes that Plaintiff is attempting to assert a claim for negligent hiring, training, and supervision of its employees.  Even accepting as true that its employees were smuggling contraband into NCCC, Armor argues there is no allegation that it "knew or should have known" about such activity, and Plaintiff has therefore failed to make out a *prima facie* negligent supervision claim.  Armor Mem. at 13-14.

Claims for negligent hiring or retention fall under state tort law.  *See Gonzalez v. City of N.Y.*, 17 N.Y.S.3d 12, 15 (1st Dep't 2015).  An employer may be liable for negligent hiring or retention

> when the employer has either hired or retained the employee with knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm. The employer's negligence lies in his having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring and retention of his employees.

*Ortiz v. Parkchester N. Condo.*, No. 16-CV-9646, 2018 WL 2976011, at *10 (S.D.N.Y. June 13, 2018) (quoting *Detone v. Bullit Courier Serv., Inc.*, 528 N.Y.S.2d 575, 576 (1st Dep't 1988)).

Plaintiff is unable to sustain a claim for negligent hiring or retention because he has failed to allege that Armor was aware of any improper conduct on behalf of its employees. There is simply nothing in the Amended Complaint or Plaintiff's other submissions which plausibly allege notice or knowledge.  "Without the knowledge element, a plaintiff cannot establish a prima facie case for negligent hiring, retention, and supervision claims." *Sanusi v. Dep't of Homeland Sec.*, No. 06 CV 2929, 2010 WL 10091023, at *20 (E.D.N.Y. Dec. 1, 2010), *report and recommendation adopted as modified*, No. 06 CV 2929, 2014 WL 1310344 (E.D.N.Y. Mar. 31, 2014); *see Cruz v. New York*, 24 F. Supp. 3d 299, 312 (W.D.N.Y. 2014).

Plaintiff's opposition papers provide no additional support for his claim.  Rather, Plaintiff's two filings in opposition to Armor's motion are replete with conclusory assertions, including that "[a]fter reading all the paperwork from Armor in their Motion to Dismiss, it amazes me that their is no mention of the fact that their employee smuggled hundreds of razors into NCCC for gang members."  Pl.'s Opp'n. I at 2.  To the extent Plaintiff is arguing that the act of smuggling weapons into the NCCC is self-evident and should in and of itself establish notice or knowledge, his argument must fail.

Moreover, as already noted, the online news article filed at DE 14 does not support the claim that Armor was or should have been aware of smuggling because the Court cannot assume the truth of the article's content.  *Garber*, 347 Fed. App'x at 669.  However, even if the Court could consider as true the substance of the article, the article would not suffice to plead Armor's knowledge.  Rather, the article concerns smuggling of cigarettes by a single Armor employee which took place sometime in 2016.  In the Court's view, these circumstances are too far removed in both time and substance to support a plausible allegation that Armor knew or should have known its employees were smuggling razorblades into the NCCC.

Because Plaintiff has failed to allege that Armor was or should have been aware of the improper conduct of its employees, the Court respectfully recommends to Judge Bianco that Armor's motion to dismiss with respect to Plaintiff's claim for negligent hiring or retention be GRANTED.

### D.    Leave to Re-Plead

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal

pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them.").  The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *see* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Even under this liberal standard, however, a court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims," and, as a result, "any attempt to amend the pleading . . . would be futile."  *Shorter v. Rice*, No. 12-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.").

The Court notes that Plaintiff has previously been given the opportunity to amend his pleadings.  In fact, the current operative pleading is the third complaint filed by the Plaintiff.  Likewise, Plaintiff has filed multiple correspondences and other submissions on the docket which this Court has considered in analyzing Armor's motion to the extent the allegations contained in those filings were not inconsistent with the operative pleading.  The Court therefore defers to Judge Bianco with respect to whether the Plaintiff should be given a further opportunity to re-plead his claims against Armor.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Bianco that Plaintiff's motions for summary judgment be DENIED, and that Armor's motion to dismiss be GRANTED as to any Section 1983 claim and any negligent hiring or retention claim Plaintiff attempts to assert against Armor.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joseph F. Bianco, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Bianco prior to the expiration of the fourteen (14) day period for filing objections**. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**Counsel for the Nassau County Defendants is directed to serve a copy of this Report and Recommendation upon the Plaintiff *pro se* forthwith by overnight mail and first-class mail and to file proof of such service on ECF by March 5, 2019**.


                                                    SO ORDERED.

Dated: Central Islip, New York
        February 28, 2019

                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON
                                                    U.S. Magistrate Judge